## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| ROBERT R. RITZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| LAKE COUNTY, ILLINOIS; MARK ) | |
| C. CURRAN, JR., Sheriff of Lake ) | |
| County, Illinois; SCOTT FITCH, ) | Jury Demand |
| Lake County Jail Medical Director; ) | |
| DR. _____ VALLURY, Doctor at Lake ) | |
| County Jail; Nurse NATALIE_____ ) | 08CV5026 |
| (name unknown), Nurse at Lake County ) | JUDGE ZAGEL |
| Jail. ) | MAG. JUDGE ASHMAN |
| Defendants. ) | |

FILED
SEP X 3 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT

The Plaintiff, ROBERT RICHARD RITZ, by his attorney, Mark P. Standa P.C., complaining of the Defendants, LAKE COUNTY, ILLINOIS; MARK C. CURRAN, JR., Sheriff of Lake County, Illinois; SCOTT FITCH, Lake County Jail Medical Director; DR. _____ VALLURY(exact name and spelling unknown), Doctor at Lake County Jail; NURSE NATALIE_____ (name unknown), Nurse at the Lake County Jail, for his claim for relief states as follows:

### I. Jurisdiction & Venue.

1. This Court's jurisdiction to hear Plaintiff's claims under the Civil Rights Act of 1871, 42 U.S.C. Section 1983, is founded upon 28 U.S.C. Section 1343(a)(3)& (4). This Court has supplemental jurisdiction over Plaintiff's pendent state law claims under 28 USC Section 1367(b).

2. Plaintiff is now and at all times relevant was a resident of Lake County, Illinois. Defendant, Lake County, Illinois, is a local governmental entity incorporated under the laws of the State

of Illinois. Each of the individual Defendants, Mark C. Curran, Jr., Sheriff of Lake County; Scott Fitch, Lake County Jail Medical Director; Dr. _____ Vallury, a Doctor at the Lake County Jail; and Nurse Natalie_____ (name unknown), a nurse at the Lake County Jail; are believed to be residents of Lake County, Illinois.

3. The Plaintiff's claim arose in Lake County, Illinois, specifically at the Lake County Jail in Waukegan, Illinois starting on or about September 6, 2007 and thereafter during Plaintiff's period of incarceration as a pre-trial detainee at the Lake County Jail.

4. Venue exists under 28 U.S.C. Section 1391(b).

## II. The Parties.

5. The Plaintiff, ROBERT RICHARD RITZ, was born on October 14, 1981. At the time of his incarceration in September, 2007, Plaintiff resided at 145 Glen St., Apt. 2B, Grayslake, Illinois 60030, in Lake County, Illinois.

6. Defendant, LAKE COUNTY, ILLINOIS, is a local governmental entity organized and existing under the laws of the State of Illinois. It is responsible for the operation of and funding of the operations of the Lake County Jail, as well as all services performed under the offices of the Lake County Sheriff's office, an agency of the County government. In addition, Lake County is responsible for the payment of any settlement or judgment of Federal Civil Rights claims against Lake County Sheriff, Mark Curran, and his agents, servants, and employees acting within the scope of their employment, including the Defendants, Scott Fitch, Dr. _____ Vallury, and Nurse Natalie_____ (name unknown).

7. Defendant, SHERIFF MARK C. CURRAN, JR., (hereinafter "Sheriff Curran") at all times relevant was the Sheriff of Lake County, Illinois, and the elected Officer/Official responsible

for law enforcement and the operations of the Lake County Jail in Waukegan, Illinois. At all times relevant, Sheriff Curran was acting under color of state law within the scope of his employment as the Sheriff of Lake County. He is sued in his individual and official capacities.

8. Defendant, SCOTT FITCH, at all times relevant was an officer, agent, and employee of the Sheriff's Department of Lake County, Illinois, who at all times material was the Medical Director and/or Jail Administrator, acting under color of state law within the scope of his employment for Sheriff Curran and Lake County. He is sued in his individual and official capacities.

9. Defendant, NURSE NATALIE_____,(name unknown), who was a nurse at the Lake County Jail, was an agent, servant, and employee of the Sheriff's Department of Lake County, Illinois, and at all times material was acting under color of state law within the scope of her employment as a nurse for Sheriff Curran and Lake County. She is sued in her individual capacity.

10. Defendant, DR. _____ VALLURY, was at all times material an agent, servant, and employee of the Sheriff Curran and Lake County, Illinois, who was acting under color of state law within the scope of his employment as a medical doctor at the Lake County Jail. At all times relevant, Dr. VALLURY was charged with the responsibility for providing medical services as a physician to those persons confined as pre-trail detainees in the Lake County Jail, including the Plaintiff, ROBERT RITZ. He is sued in his individual capacity.

### III.  Background Medical Facts & Plaintiff's Arrest.

11. Prior to his arrest and incarceration in the Defendants' jail on or about September 7, 2007, the Plaintiff suffered from insulin-dependant Diabetes and severe diabetic retinopathy in both

of his eyes. In order to treat and care for this vision threatening and vision impairing disease, the Plaintiff had been under the care of Dr. Ira Garoon since July, 2006, and Dr. Garoon was the Plaintiff's primary vision-care doctor, including his eye surgeon.

12. At all times relevant, the Plaintiff suffered from insulin-dependent diabetes, which he had suffered since childhood. This disease required that Plaintiff strictly monitor his blood sugar levels on a multiple times per day basis, and further required that the Plaintiff adhere to a strict diabetic diet, and take insulin daily. At the beginning of his incarceration at the Defendants' Jail, both the Plaintiff and the Plaintiff's doctors advised one or more of the Defendants that Plaintiff had to comply with these diabetes-related care/treatment requirements, because failing to do so would have serious adverse affects on the health and well-being of his eyes.

13. On or about August 29, 2007, the Plaintiff underwent inpatient eye surgery at the hands of Dr. Garoon at Lutheran General Hospital, Park Ridge, Illinois. At the time, the pre-operative and post-operative diagnosis were left vitreous hemorrhage and traction, retinal detachment secondary to proliferative diabetic retinopathy. The surgical procedure Plaintiff underwent for his left eye that day was a pars planar vetrectomy, membranectomy, with air-fluid exchange, and laser beam photocoagulation. This was major eye surgery in Plaintiff's left eye, under general anesthesia where his eye was literally sliced open and the vitreous removed preparatory to surgical attempts to reattach Plaintiff's detached retina. A pars planar vetrectomy was performed, removing a dense vitreous hemorrhage.

14. During the surgery of August 29, 2007, Dr. Garoon found that there were extensive membranes in the Plaintiff's eyes and macular edema. The Plaintiff had progressive retinopathy with extensive scar tissue in his eye, which needed to be removed and was removed in this surgery.

15. At the conclusion of this surgery of August 29, 2007, a liquid gas bubble was injected into the Plaintiff's left eye as a prophylactic measure in order to facilitate the healing process attendant to retinal re-attachment. The gas bubble is intended to hold the retina in place by putting pressure on the retina during the post-surgical healing process. In order for the gas bubble to perform its intended function, there needed to be strict positioning of the Plaintiff's head to keep the bubble in the proper position. In this case, the Plaintiff needed to have constant head elevation, at least no lower than 45 degrees. This head elevation was required at all times, especially when sleeping, for a period of six to eight weeks post surgery. At the beginning of his incarceration at the Defendants' Jail, both the Plaintiff and Dr. Garoon notified one or more of the Defendants about the import and significance of this gas bubble and the absolute need for Plaintiff to be afforded living and sleeping arrangements conducive to maintaining the required head elevation, and Dr. Garoon notified the Defendants that the failure to maintain strict compliance with this requirement would likely result in serious adverse effects on Plaintiff's eye, including blindness.

16. In addition, multiple post-surgical eye drops were required to be used three times per day by the Plaintiff. At the beginning of his incarceration at the Defendants' Jail, the Plaintiff and Dr. Garoon notified one or more of the Defendants about the Plaintiff's post-surgical eye drops requirements, and Dr. Garoon notified the Defendants that the failure to comply with these eye drop requirements would likely result in serious adverse effects on Plaintiff's eye, including blindness..

17. Dr. Garoon's surgery went well, without complications, and he accomplished the goals intended to be achieved by the surgery he performed. Plaintiff was discharged from Lutheran General Hospital following surgery on August 30, 2007 with multiple post-surgical discharge instructions for follow up medical care and treatment, as aforesaid, and as more fully delineated below.

18. On September 5, 2007, the Plaintiff was arrested because a child who was a friend of the Plaintiff's son, falsely claimed that the Plaintiff had fondled her some three or four years earlier, so the police charged Plaintiff with criminal sexual misconduct violations. On information and belief, the complaining witness (the girl) has since claimed that her own father committed some unknown sexual act or acts upon her, and her father has had criminal charges filed against him.

19. After Plaintiff's bond hearing on or about September 6, 2007, Plaintiff was unable to post bond, so he was incarcerated at the Lake County Jail in Waukegan, Illinois. This was just eight days after the major left eye surgery he underwent on August 29, 2007 and during the initial critical phase of his mandatory post-surgical recuperative medical care and treatment.

## IV. Plaintiff's Incarceration at the Lake County Jail & Defendants' Denial of Plaintiff's Healthcare-related Medical Needs.

20. On or about September 6, 2007, Plaintiff was incarcerated at the Lake County Jail, in Waukegan, Illinois, awaiting trial on the criminal charges and allegations against him. At that time, Plaintiff was under the post-surgical care of Dr. Garoon. Indeed, at that time, the Plaintiff was just at the beginning of his post-operative recuperation period, which was to last, under normal circumstances, upwards of six to eight weeks. At that time, the Plaintiff's doctors' orders were as follows: **(1)** strict compliance with all diabetic-control protocols, including proper diet, proper monitoring of blood sugar levels, and regular administration of insulin; **(2)** multiple types of medicated eye drops, three times per day; **(3)** regular follow-up visits at Dr. Garoon's office for eye examinations; and **(4)** head elevation at all times during the day and at night in order to facilitate the proper positioning of the gas bubble injected into Plaintiff's eye to hold the retina in place during the healing process.

21. When the Plaintiff became incarcerated at the Lake County Jail on September 7, 2007, he informed one or more of the Defendants and other Lake County Jail employees that he had to follow these post-surgical medical requirements with regard to his diabetes control and the post-surgical healing and recuperation of his left eye as more fully delineated in paragraph 20, *supra*. In addition, at the beginning of Plaintiff's incarceration at the Defendants' Jail, Dr. Garoon and employees of Dr. Garoon's medical office also informed the Defendants and others at the jail about these medical requirements and the serious adverse effects of failing to follow these requirements, including blindness.

22. Notwithstanding the fact that Defendants had knowledge of the Plaintiff's serious medical needs, the Defendants acted with deliberate indifference to Plaintiff's serious medical needs, and denied him access to his medical doctors, denied him access to proper and appropriate sleeping and resting facilities so as to keep his head properly elevated, denied him access to his eye drops, and denied him a proper diabetic diet as well as sufficient access to blood sugar monitoring and insulin intake. As a result, the Plaintiff's left eye condition failed to heal and deteriorated severely.

23. On September 7, 2007, Plaintiff's eye doctor/eye surgeon, Dr. Garoon, wrote a letter to the authorities at the Lake County Jail, including the Defendants, explaining the Plaintiff's situation and his need for medical care. This correspondence followed up on a phone call Dr. Garoon had made to the nurse who was taking care of Plaintiff at the Lake County Jail. The jail's nurse had told Dr. Garoon that it was not possible in the jail's medical facility to provide the Plaintiff with a bed and/or pillows, and/or other means by which he could maintain constant head elevation of at least 45 degrees in order to have his head strictly positioned to keep the gas bubble in his eye in the proper position. As a result of the nurse telling Dr. Garoon that this was not possible, Dr. Garoon's letter of September 7, 2007 to the Defendants requested that Plaintiff be released to home to maintain strict head elevation because of the risk of him losing the left eye and/or having the left eye lose its sight. Notwithstanding Dr. Garoon's request and advice to the Defendants in this regard, the

Defendants acted with deliberate indifference to the Plaintiff's serious medical needs, denied Dr. Garoon's requests, and denied giving Plaintiff access to sufficient means of keeping his head elevated.

24. Dr. Garoon continued to follow up in order to gain access to the Plaintiff in order to examine the Plaintiff. It was Dr. Garoon's intention, in this immediate post-operative period, to examine the Plaintiff every two or three days, which encompassed dilating the pupils and looking into the Plaintiff's eye to visually examine the retina. Dr. Garoon also advised the Defendants that the Plaintiff needed to have his three eye drop medications at least three times each day, and advised the Defendants that he needed to see/examine the Plaintiff. Notwithstanding Dr. Garoon's statements and requests to the Defendants in this regard, the Defendants acted with deliberate indifference to the Plaintiff's serious medical needs and denied Dr. Garoon access to the Plaintiff, denied the Plaintiff access to his eye drop medication, denied the Plaintiff proper dietary and diabetes-control, and denied Plaintiff proper facilities to keep his head elevated.

25. Notwithstanding the reasonable requests of the Plaintiff and the Plaintiff's doctor, Dr. Garoon, to allow the Plaintiff to receive necessary medical care to treat Plaintiff's serious medical needs and conditions, the Defendants persisted in denying Plaintiff access to proper medical care, proper diabetic medication and monitoring, and proper nutrition, and sufficient means of keeping his head elevated. This situation continued throughout the month of September, 2007 and into October, 2007.

26. It was not until October 4, 2007, that the Plaintiff was first seen in Dr. Garoon's medical office after his incarceration on September 6, 2007. On examination, Dr. Garoon found that Plaintiff had a recurrent retinal detachment in his left eye requiring additional complicated surgery for his left eye at Lutheran General Hospital. Dr. Garoon wrote a letter on October 9, 2007 to the Defendants explaining this situation and recommending that the Plaintiff be allowed to recuperate after this second left eye surgery in a hospital or home until his eye was

stable enough for his return to jail. The doctor also pointed out in his letter to Defendants that due to the extent of the upcoming surgery, Plaintiff's insulin levels must be maintained at a healthy level and he must maintain a certain head position to prevent blindness. Dr. Garoon further noted that Plaintiff's recovery was expected at approximately six to eight weeks after this second surgery, and many follow-up examinations would be required to monitor his condition after surgery.

27. The Plaintiff was forced to hire an attorney to seek a Court Order to compel the Defendants to give him access to proper medical care, give him proper nutrition, and give him proper facilities so as to properly elevate his head. On October 10, 2007, Judge Bridges of the 19th Judicial Circuit Court entered a Court Order stating that **"The Lake County Jail shall comply with Defendant's [Robert Ritz's] insulin, medical, dietary, and post-operative requirements; and shall contact Retinologist, Ira Garoon... for specific instructions as to said requirements."** Nevertheless, further follow up emergency motions were required to compel the Defendants to comply with the Court orders requiring the Defendants to allow Plaintiff to obtain necessary medical care and to otherwise comply with his doctors' post-surgical discharge instructions as well as further eye surgeries in the Fall of 2007.

28. Because the Defendants deliberately denied the Plaintiff reasonably needed and necessary medical care to treat Plaintiff's serious medical needs, and/or because the Defendants acted with deliberate indifference to Plaintiff's serious medical needs and denied him access to proper medical care and proper diet, the Plaintiff's left eye condition continued to severely deteriorate, resulting in the necessity of multiple follow-up surgeries in an effort to save the vision in Plaintiff's left eye. Dr. Garoon performed two such further left eye surgical procedures in late 2007.

29. Nevertheless, Plaintiff's left eye condition continued to deteriorate, such that the Plaintiff eventually lost all vision in his left eye and is now totally and permanently blind in his left eye. It is the opinion of Dr. Garoon, to a reasonable degree of medical and surgical certainty,

that his initial surgery to Plaintiff's left eye on August 29, 2007 was successful and would have resulted in Plaintiff being able to see with his left eye if the Plaintiff had not been denied follow-up medical care, medication, head positioning, proper nutrition, and other diabetic treatment/monitoring after the surgery.

## V. Defendants' Institutional Policy of Intentional and/or Deliberate Indifference to Plaintiff's Serious Medical Needs.

30. At all times relevant, the Defendants, and each of them, were acting under color of state law and claimed to be following the policy and procedures of Sheriff Curran's County office in denying Plaintiff access to proper medical care and treatment. Indeed, there was a custom and policy of Sheriff Curran's office and the Jail's personnel, acting under color of state law, in force at all times material here of intentional disregard or deliberate indifference to the serious necessary medical care needs of pretrial detainees such as Plaintiff incarcerated at Lake County Jail.

## VI. Constitutional Deprivation of Rights & Violation of Section 1983.

31. The Plaintiff, while incarcerated as a pre-trial detainee at the Lake County Jail, had a constitutionally protected liberty interest in receiving necessary medical care while he was confined as a pretrial detainee protected by the Fourteenth Amendment of the United States Constitution. The Plaintiff's trial and plea bargain agreement on the charges against him took place in June 2008, so at all times relevant to the Defendants' actionable misconduct as alleged herein, which took place well-before June 2008, the Plaintiff was a pre-trial detainee who, under the law of these United States, enjoyed the presumption of innocence.

32. In denying the Plaintiff access to proper medical care to treat his serious medical needs, the Defendants violated 42 U.S.C. Section 1983 by acting under the color of state law and/or

under color of County policy, procedure, custom or usage, thereby subjecting Plaintiff to the deprivation of his right secured by the Constitution under the Fourteenth Amendment to not be deprived of proper medical care. In short, the Plaintiff was deprived of his right to receive necessary medical care that is part of the substantive guarantee of the due process of law clause under the Fourteenth Amendment of the United States Constitution.

33. The Defendants denial of necessary medical care to the Plaintiff while he was incarcerated at the Lake County Jail as a pretrial detainee was either intentional or was done with deliberate indifference to the Plaintiff's serious medical needs.

## VII. State Law Violations

34. Under Illinois law, the Defendants' denial of necessary medical care to the Plaintiff was done either intentionally, willfully and wantonly, or grossly negligently, giving rise to causes of action under Illinois substantive State law to redress the injuries caused by Defendants' denial of medical care. In addition, the Defendants' intentional acts/omissions, as aforesaid, caused the infliction of severe emotional distress to Plaintiff, giving rise to a State cause of action for intentional infliction of emotional distress.

35. The Defendants' denial of necessary medical care to the Plaintiff violated the Plaintiff's rights under the Illinois Constitution, Article I, Sections 1 & 2. In addition, the Plaintiff has the right to a full and just remedy under Article 1, Section 12 of the Illinois Constitution to redress the injury and harm the Defendants, their agents and employees inflicted upon him.

36. The Defendant, LAKE COUNTY, ILLINOIS is responsible for and liable under the Doctrine of *Respondeat Superior* for the acts and/or omissions of its officers, agents, apparent agents, servants, and employees working in and about the Lake County Jail, including, without limitation, each of the named Defendants herein under the common law doctrine of *Respondeat Superior*.

37. Defendant, LAKE COUNTY, ILLINOIS, is responsible for and liable for the payment of any settlement or judgment of the Federal Civil Rights claims against the other Defendants, including Sheriff Curran, Scott Fitch, Dr. Vallury, and Nurse Natalie_____ (name unknown) under Section 9-102 of the Illinois Local Governmental Tort Immunity Act. 745 ILCS 10/9-102 (2006).

## VIII. Relief Sought.

38. By reason of the foregoing alleged facts, and as a direct and proximate result of the deprivation of his Constitutional rights and State law violations by the Defendants herein, the Plaintiff was deprived of necessary medical care as a pretrial detainee at the Lake County Jail and, as a result, the Plaintiff was forced to undergo successive eye surgeries for his left eye, the Plaintiff permanently lost the vision in his left eye, the Plaintiff incurred medical care and treatment costs that would not have been necessary but for the fact that the Defendants deprived him of medical care after his surgery of August 29, 2007, the Plaintiff suffered severe mental anguish and distress as he contemplated his impending loss of vision and trying to cope with the loss of his vision, and the Plaintiff endured extensive pain and suffering.

39. The misconduct of the individual Defendants is such that for purposes of punishment and by way of example, the Plaintiff is entitled to an award of punitive damages against each of the Defendants.

40. The Plaintiff has and will incur attorney's fees and costs, as well as expenses in the prosecution of this lawsuit against these Defendants for which he is entitled to an award as a prevailing party Plaintiff under 42 USC Section 1988.

**WHEREFORE**, the Plaintiff, ROBERT R. RITZ, prays for judgment in his favor and against Defendants, and each of them, for compensatory damages in the amount of 2.5 million dollars and punitive damages in the amount of 1 million dollars. The Plaintiff further prays for an award of attorney's fees and expenses, including expert witness fees due a prevailing party Plaintiff as part of his costs under 42 USC Section 1988. Furthermore, the Plaintiff prays for such other relief as this Court deems equitable and just.

**Plaintiff demands trial by jury.**

              Respectfully submitted,
              MARK P. STANDA, P.C.

            By: *Mark P. Standa*
               Mark Peter Standa

              9-3-08

Mark P. Standa, P.C.
582 N. Oakwood Ave., Suite 201
Lake Forest, IL 60045
847/295-5544