# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| Robert R. Ritz, III, | |
| Plaintiff, | |
| v. | No. 08 C 5026<br>Judge James B. Zagel |
| Lake County, Illinois, Marc C. Curran, Jr., Sheriff of Lake County, Scott Fitch, Lake County Jail Medical Director, Health Professionals Ltd., an Illinois corporation, Dr. Venkata Vallury, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed his Second Amended Complaint ("SAC") alleging violations of 42 U.S.C. Section 1983 and Illinois state law. Following the filing of Plaintiff's first amended complaint, I ordered Plaintiff to conduct discovery in the hopes of clarifying his claims. Plaintiff has conducted written discovery and taken several depositions.[1] Defendants Health Professionals, Ltd. and Venkata Vallury, as well as Defendants Lake County, Mark C. Curran, Jr., and Scott Fitch now move to dismiss the SAC in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part.

---

[1] Plaintiff has taken the depositions of Lake County Sheriff's Lieutenant Ward, Lake County Sheriff's Lieutenant Wathen, Defendant Scott Fitch, Lake County Purchasing Agent Gary Reis, HPL employees Natalie Qualls, David Padilla and Andrew Walters, Tom Madole, and Mary Jo Covarrubius.

## I. STATEMENT OF FACTS

Plaintiff Robert Ritz has diabetes and suffered from diabetic retinopathy requiring open eye surgery on August 29, 2007.  On September 6, 2007, Ritz became a pretrial detainee at the Lake County Jail.  Lake County contracted with Defendant Health Professionals Ltd. ("HPL") to provide medical services to detainees at the jail.  Defendant Scott Fitch is a registered nurse and served as the Sheriff's Heath Services Coordinator at the Jail.  Dr. Vallury, a general practitioner, was HPL's Medical Director at the Jail.

On September 7, 2007, Plaintiff's eye surgeon, Dr. Garoon, contacted HPL regarding Ritz's condition, and informed HPL that if Ritz did not keep his head elevated at a 45-degree angle he could lose his eye sight.  Defendant Fitch was informed of Plaintiff's condition.  Dr. Garoon faxed letters to Jail authorities emphasizing the need to keep Ritz's head in the proper position, noting that Ritz had missed several post-operative appointments, and warning that Ritz could lose his vision.  Although Dr. Vallury, HPL's Jail Medical Director did see Ritz, Plaintiff alleges that he was not qualified to provide proper care because Dr. Vallury is not an eye specialist.

The Jail Policy and Procedures Manual states that inmates with chronic diseases like diabetes, and those who require specialty care services will receive appropriate care.  Plaintiff alleges that he failed to receive adequate care for his eye and his diabetes.   Plaintiff asserts that Dr. Garoon was not allowed to see Ritz until October 4, 2007.  At that time, Dr. Garoon determined that his left retina had detached again, and more surgery was required.  Plaintiff underwent a second surgery in October 2007 because of complications with the healing process.

Further, Plaintiff alleges that he did not receive care for his diabetic condition until November 11, 2007.

On October 10, 2007 Judge Bridges of the 19th Judicial Circuit entered an Order requiring the Lake County Jail to comply with Defendant's diabetic and post-operative medical needs. On October 16, 2007 Fitch was summoned to State court by Judge Bridges. Following the hearing, the Judge entered an Order directing Fitch and Jail authorities to give Ritz the necessary medical care. On October 23, 2007 the parties returned to court and Plaintiff filed an Inmate Grievance complaining of his lack of proper medical care. The Lake County Sheriff's Office denied Ritz's Grievance.

Following Ritz's second corrective surgery, he underwent a third surgery on December 5, 2008. This operation was unsuccessful. Ritz is now totally and permanently blind in his left eye.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). I must take all facts alleged in Plaintiff's complaint as true and draw all reasonable inferences from those facts in favor of the Plaintiff. *Caldwell v. City of Elwood*, 959 F.2d 670, 671 (7th Cir. 1992). Plaintiff, for his part, must do more than solely recite the elements for a violation; he must plead with sufficient particularity so that his right to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead his facts so that, when accepted as true, they show the plausibility of his claim for relief. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plaintiff must do more than

plead facts that are "consistent with defendants' liability" because that only shows the possibility, not the plausibility, of his entitlement to relief. *Id.* (internal quotations omitted).

## III. DISCUSSION

### A. Motion to Strike Exhibits

Defendants Lake County, Curran and Fitch argue that the exhibits attached to Plaintiff's response to Defendants' motions to dismiss should be struck as not part of the pleadings and outside of the Courts 12(b)(6) analysis. When ruling on a motion to dismiss, a court must generally consider only the Plaintiff's complaint. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002). However, Federal Rule of Civil Procedure 10(c) provides, that "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." FED. R. CIV. P. 10(c). The Seventh Circuit has "make[d] clear that this rule includes a limited class of attachments to Rule 12(b)(6) motions." *Rosenblum,* 299 F.3d at 661. Specifically, "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir.1994) (emphasis added). This rule "logically extends to documents attached to a plaintiff's response." *Metz v. Joe Rizza Imports, Inc.*, No. 09 c 3178, 2010 WL 1253922, at * 3 (N.D. Ill. March 23, 2010). Here, all of exhibits attached to Plaintiff's response were cited to in his complaint and are central to Plaintiff's claim. Accordingly, I decline to strike the exhibits attached to Plaintiff's response.

### B. Claims Asserted Pursuant to Section 1983

Pretrial detainees are protected by the Fourteenth Amendment's substantive due process clause, rather than the Eighth Amendment's prohibition against cruel and unusual punishment.

*Collignon v. Milwaukee County*, 163 F.3d 982, 986-87 (7th Cir. 1998). The Seventh Circuit has noted, however, that there is no substantive difference between the applicable liability standards. *Id*. at 988-89. Accordingly, the deliberate indifference standard used in conjunction with the Eighth Amendment is also utilized to analyze the conduct of prison officials for the purposes of the Fourteenth Amendment. *Id*. The Eighth Amendment bans cruel and unusual punishment and requires that prison officials provide adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). An Eighth Amendment claim based on inadequate medical care contains two elements: (1) the prisoner suffered an objectively serious harm that presented a substantial risk to his safety, and (2) the defendants were deliberately indifferent to that risk. *Collins v. Seeman,* 462 F.3d 757, 760 (7th Cir.2006); *Minix v. Canarecci,* 597 F.3d 824, 830 -31 (7th Cir. 2010). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, 'sufficiently serious.'" *Farmer,* 511 U.S. at 834 (quoting *Walker v. Benjamin,* 293 F.3d 1030, 1037 (7th Cir.2002)). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. *Foelker v. Outagamie County,* 394 F.3d 510, 512-13 (7th Cir.2005).

  To satisfy the subjective deliberate indifference component, a prisoner must demonstrate that prison officials acted with a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 297 (1991)). This analysis has two components, the officials must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Farmer,* 511 U.S. at 837. This is not to say that a prisoner must establish that officials intended or desired the harm that transpired.

*Walker,* 293 F.3d at 1037. Instead, it is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk. *Id.* Additionally, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer,* 511 U.S. at 842.

As an initial matter, I find that Plaintiff has alleged sufficient facts in his complaint to show that he had a serious medical condition. It is undisputed that Plaintiff had eye surgery prior to his incarceration, and further uncontested that Dr. Garoon diagnosed Plaintiff with a serious medical need.

### 1. Defendant Scott Fitch

"Section 1983 does not establish a system of vicarious responsibility.[] Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 593 (7th Cir. 2009). While mere negligence is not enough, if a claim is against a supervisor, then liability can be found where a supervisor knows about the alleged deprivation and approves, condones, or turns a blind eye to it. *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir. 1996); *Johnson v. Snyder*, 444 F.3d 579 (7th Cir. 2006). Defendants argue Plaintiff's Section 1983 counts should be dismissed as to Fitch because he did not know about any alleged mistreatment of Plaintiff. Further, they argue that even if Fitch should have known about the harm, such allegations are insufficient because an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Plaintiff argues that Fitch failed to monitor his condition. Fitch served as a Health Services Coordinator at the Lake County Jail and his role was to monitor the contract between HPL and the Lake County Jail. While Plaintiff alleges that Fitch knew about Plaintiff's need for medical care when he entered the jail, he does not allege facts to show that Fitch was aware of the alleged mistreatment. Although Plaintiff argues that Fitch failed to monitor his condition, failed to exercise oversight and failed to inquire about Plaintiff's condition, these allegations are insufficient to maintain a Section 1983 claim. Instead, Defendant must have known about the alleged deprivation and approved, or turned a blind eye to it. *Vance*, 97 F.3d at 992-93.

Next, Plaintiff argues that Fitch "turned a blind eye" toward Ritz's eye problems because, as the official liaison between the Sheriff's department and HPL, it was Fitch's job to ensure that Plaintiff was obtaining adequate medical care. The SAC alleges that Fitch was notified of Plaintiff's serious medical condition on September 7, 2007. Fitch then informed Nurse Padilla that "we need to make sure that we were on top of our game with caring for this inmate." Section 1983, however, does not allow supervisors to be held liable merely for "their supervisory roles of others." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003)(citing *Zimmerman v. Tribble*, 568, 574 (7th Cir. 2000). While direct participation is not needed, a plaintiff must show that the defendant "acquiesced in some demonstrable way in the alleged constitutional violation." *Palmer*, 327 F.3d at 595. Plaintiff has not made such a showing.

While it is true that Fitch might have been negligent in his duties, mere negligence is insufficient to maintain a Section 1983 claim. *Vance*, 97 F.3d at 992-93. Plaintiff fails to allege facts to suggest that Plaintiff had any knowledge of Ritz's treatment until the court hearings in mid-October of 2007. Thereafter, Plaintiff states that Fitch "personally contacted Dr. Garoon's

office [after the court hearings] and arranged for the needed follow up treatment and surgery." These facts do not support a finding of deliberate indifference. Plaintiff does not assert any additional facts as to alleged misconduct by Fitch after the court dates.

Finally, Plaintiff implies that Fitch violated the health services contract between Lake County and HPL as well as the Jail Policies and Procedures Manual. Plaintiff, however, cannot establish a Section 1983 case based on alleged violations of policies or contracts. Section 1983 protects plaintiffs from constitutional violations, not violations of state laws, departmental regulations, policies, rules or practices. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

Because I find that Fitch did not act with deliberate indifference, I do not address Defendants' arguments regarding qualified immunity. Defendants' motion to dismiss Plaintiff's Section 1983 count as to Fitch is granted.

## 2. Defendants Sheriff Curran and Lake County

To state a Section 1983 claim against a municipality, a complaint must identify an official custom or policy that not only caused a constitutional violation, but was the moving force behind it. *Estate of Sims v. County of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). Furthermore, a custom or policy cannot be established based on the experience of a single inmate. *Palmer*, 327 F.3d at 597. Instead, there must be allegations that a policy was persistent and widespread. *Holmes v. Sheahan*, 930 F.2d 1196, 1200 (7th Cir. 1991). Plaintiff alleges that Sheriff Curran and Lake County are liable because three jail policies violated Section 1983: (1) the policy not to have an eye doctor come into the jail to treat detainees who had serious eye conditions; (2) the policy to have intake correctional officers conduct intake evaluations, but not to notify Fitch about the intake results; and (3) the policy to have Nurse Fitch *not* participate in the coordination

of health care services for detainees. Further, Plaintiff considers Lake County a necessary party because this suit seeks damages from an independently elected county official in his official capacity.

### a. Policy of Not Having and On Site Eye Doctor

The first policy that Plaintiff asserts is unconstitutional is the Jail's policy of not having an eye doctor on site. The failure to have a specialist in the Jail does not support a constitutional claim for deliberate indifference as inmates are "not entitled to demand specific care." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Furthermore, Lake County contracted out the provision of medical care, including specialty services, to the medical provider HPL. Accordingly, because the HPL contract required HPL to provide specialist care to inmates, it is implausible to suggest that Defendants maintained a policy to the contrary.

### b. Policy of Not Communicating Intake information

Plaintiff alleges that the Jail had a policy of not communicating information between the intake officer and the Health Services Coordinator Scott Fitch. This assertion is belied by the SAC. The SAC alleges that Fitch knew of Plaintiff's medical problems on his first day of incarceration. Therefore, even if there was a policy of not communicating, it is irrelevant to this case because Fitch was made aware of Plaintiff's condition upon his incarceration.

### c. De-facto Policy of Not Participating in Health Care

Plaintiff alleges that Defendants maintained the de-facto policy of not having Fitch participate in the coordination of health care services for Jail detainees to avoid liability under Section 1983. Plaintiff's SAC fails to allege facts to support this claim and offers no other instances where a Lake County Jail inmate's health care failed or was intentionally avoided.

9

*Phelan v. Cook County*, 463 F.3d 773, 790 (7th Cir. 2006) (to show an implicit policy or gap, evidence must show that the unlawful behavior was pervasive).

Because Plaintiff fails to state a claim in regard to any alleged unconstitutional policy, Defendants' motion to dismiss Plaintiff's Section 1983 claims against Defendants Sheriff Curran and Lake County is granted.

### 3. Defendant Health Professionals Limited

An unconstitutional policy can be found when: (1) an express policy causes a constitutional deprivation when enforced; (2) a widespread practice that, though unauthorized, is so well settled that is constitutes a custom or usage with the force of law; or (3) an allegation that a person with final policy making authority caused the injury. *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir 2004). Liability cannot be founded on a theory of vicarious liability or respondeat superior; the practice or policy must be the direct cause of the constitutional violation. *Estate of Novack v. County of Wood*, 226 F.3d 525, 530 (7th Cir. 2000). Plaintiff argues that HPL's violations of alleged policy and procedure were the direct cause behind his constitutional claims. While it may be true that violations of certain HPL policies were the source of Plaintiff's injuries, Plaintiff has failed to identify an express policy which caused a constitutional deprivation, a widespread practice, or that a person with final policy making authority caused his injury. Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 claims as to HPL is granted.

### 4. Dr. Venkata Vallury

Because Defendants have asserted no arguments as to why Plaintiff's Section 1983 claims should be dismissed as to Defendant Vallury, I deny Defendants' motion to dismiss Plaintiff's Section 1983 claims against him.

<u>C. State Law Claims</u>

Plaintiff has asserted claims under Illinois law alleging denial of necessary medical care, intentional infliction of emotional distress, breach of contractual rights as a third party beneficiary, and negligence.

### 1. Affidavit Requirement for State Law Tort Actions

Defendants argue that insofar as Plaintiff seeks damages for injuries as to tort, contract, or alleged medical negligence, these claims should be dismissed for failure to provide the required affidavits. 735 IL. COMP. STAT. 5/2-622.

First, pursuant to Illinois statute, a plaintiff seeking to recover in tort, contract or otherwise, for alleged medical negligence must file an affidavit declaring that either: (1) the affiant has consulted and reviewed the facts of the case with a health professional; (2) the affiant was unable to obtain a consultation because of statute of limitations issues; or (3) that a request was made by the plaintiff or his attorney for the examination of records. 735 Ill. Comp. Stat. 5/2-622(a). A separate affidavit must be filed as to each defendant. *Id*. at 5/2-622(b). Failure to comply with this requirement is grounds for dismissal. *Id*. at 5/2-622(g). While dismissal is mandatory, courts have discretion to dismiss with or without leave to amend. *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). Illinois courts "liberally construe certificates of merit in favor of the plaintiff, recognizing the statute as a tool to reduce frivolous lawsuits by requiring a minimum amount of merit, not likelihood of success." *Id*. Courts have found the statute satisfied by a single report against multiple defendants when the report is "sufficiently broad to cover each defendant, adequately discusses deficiencies in the medical care given by defendants, and establishes that a reasonable and meritorious cause exists for filing the action." *Neuman v. Burstein*, 595 N.E.2d 659, 664 (Ill. App. Ct. 1992).

Plaintiff failed to attach any affidavits to his SAC, however, he has attached an appropriate affidavit signed by his attorney Mark Peter Standa, and a corresponding report signed by Dr. Garoon to his response to Defendants' motions to dismiss. The affidavit confirms that Mr. Standa consulted with a medical doctor who is licenced to practice in Illinois and who is knowledgeable about the relevant facts of the case. The report by Dr. Garoon discusses the merits of Plaintiff's claims as to each named defendant. Accordingly, I accept the affidavit and report submitted by Plaintiff in his response, and consider his statutory obligations fulfilled. Accordingly, Defendants' motions to dismiss Plaintiff's state claims as to medical malpractice and intentional infliction of emotional distress are denied.

### 2. Plaintiff's Third-Party Beneficiary Claims

Plaintiff alleges that the Defendants' denial of necessary medical care violated his contractual rights as a third-party beneficiary. The contract at issue is the contract between Lake County and Health Professionals, Ltd. Defendants argue that Plaintiff's third-party beneficiary claims should be dismissed because Plaintiff was not an intended beneficiary.

Under Illinois law, a third-party beneficiary can enforce a contract if "the contracting parties intended to confer a benefit upon a nonparty to their agreement." *Quinn v. McGraw-Hill Cos.*, 168 F.3d 331, 334 (7th Cir. 1999). Such intent can be shown by an express declaration, or its equivalent. *Id*. "The intentions of the parties to the [contract] are to be 'gleaned from a consideration of all the contract and the circumstances surrounding the parties at the time of its execution.'" *Jackson Nat'l Life Ins. Co. v. Gofen & Glossberg, Inc.*, 882 F.Supp. 713, 721 (N.D. Ill. 1995) (internal citations omitted). There is, however, a strong presumption against the assumption that contracting parties intended to benefit a third party. *Id*. To overcome this presumption, the intent to benefit a third party must "affirmatively appear from the language of

the contract and the circumstances surrounding" its execution. *Wallace v. Chi. Housing Auth.*, 298 F.Supp.2d 710, 724 (N.D. Ill. 2003). Illinois recognizes both direct and incidental third-party beneficiaries. A direct beneficiary is a party who the contracting parties intended to benefit from the contract. *American United Logistics, Inc. v. Catellus Development Corp.*, 319 F.3d 921, 930 (7th Cir. 2003). An incidental party receives an unintended benefit from the contract. *Id*. Only a direct beneficiary may sue to enforce a contract. *Id*.

Plaintiff cites no case law to support his contention that he is a third-party beneficiary, but instead argues that there is a reasonable inference that inmates are intended third-party beneficiaries of the contract.[2] It is true that inmates and detainees are referred to as a class in the Agreement, however, this is insufficient to overcome the presumption against finding third-party beneficiaries. In *Hall-Molten v. Smith*, this Court noted that "[w]ithout any specific evidence that the [the parties] entered into their contract with the intention of benefitting inmates like Hall," there could be no finding that the inmate plaintiff was a third-party beneficiary to the contract between the State of Illinois and Wexford health services. No. 05 c 5510, 2009 WL 1033361, at *8 (N.D. Ill. April 17, 2009). Illinois law requires that intent to benefit a third party affirmatively

_____

[2] Specifically, Plaintiff points to a provision in the bid proposal that states that "the parties agree that they have not entered into this AGREEMENT for the benefit of any other third person or persons and it is their express intention that this AGREEMENT is for their respective benefits only and not for the benefits of others who might otherwise be deemed to constitute a third-party beneficiaries thereof." This provision, however, was not incorporated into the final agreement. Accordingly, Plaintiff argues that the exclusion of this provision shows intent to include the third-party beneficiary rights of the Jail's detainees. The bid proposal is parol evidence that can only be used to explain the terms of or intent of the actual contract when the contract is ambiguous. *Sunstream Jet Express, Inc. v. International Air Service Co., Ltd.*, 734 F.2d 1258, 1266 (7th Cir. 1984). As I do not consider the contract at issue ambiguous, I will not consider the bid proposal in rendering my decision.

appear from the language of the contract and the circumstances surrounding its execution. No such intent is found in the contract between Lake County and HPL.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted in part and denied in part. Defendants' motions to dismiss Plaintiff's Section 1983 counts are granted as to Defendants Scott Fitch, Lake County, Mark Curran, and Health Professionals Ltd., and denied as to Dr. Venkata Vallury. Defendants' motions to dismiss Plaintiff's state law claims as to medical malpractice and intentional infliction of emotional distress are denied. Defendants' motions to dismiss Plaintiff's state law third-party beneficiary claims are granted. Defendants' motion to strike Plaintiff's exhibits to his response is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: May 21, 2010